In re James S. MAXWELL,
Respondent.

A Member of the Bar of the District
of Columbia Court of Appeals.

No. 00–BG–221.

District of Columbia Court of Appeals.

Argued April 16, 2002.
Decided May 23, 2002.

Joseph R. Whaley, Rockville, MD, for respondent.

Traci M. Tait, Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before FARRELL, REID, and WASHINGTON, Associate Judges.

FARRELL, Associate Judge.

Respondent (hereafter Maxwell) consented to a public reprimand by the Court of Appeals of Maryland for ethical violations consisting primarily of conflicts of interest. In doing so, he admitted that the underlying conduct took place in 1986 and

1987 and was "addressed to [*sic*]" a civil lawsuit in the Superior Court of the District of Columbia that had resulted in (a) an opinion of the trial court issued in October 1995 and (b) an opinion of this court following appeal. The Maryland order of discipline rested on no other factual predicate.

In the present reciprocal discipline proceeding, the Board on Professional Responsibility (the Board) declines to recommend identical discipline because it regards Maxwell's conflicts of interest, as revealed by the findings of the Superior Court trial judge, as having strong features of aggravation. Instead the Board recommends his suspension for one year.

We are unable to accept the Board's recommendation. As pointed out, no factual determinations other than a bare reference to the Superior Court lawsuit underlay the Maryland discipline. And, for the reasons that follow, the Superior Court action and the findings of fact of the trial judge therein are not a permissible basis for concluding that Maxwell's conduct warrants discipline exceeding that imposed by Maryland. On the other hand, if the facts concerning Maxwell's behavior are satisfactorily proven, the Board's concern is a legitimate one that a public reprimand [1] may be too lenient when compared to the discipline this court has imposed for misconduct of similar gravity. We therefore will return the matter to the Board for reconsideration whether to recommend identical reciprocal discipline or to direct further proceedings under D.C. Bar Rule XI, § 11(g)(2) or (3).

### I.

Both disciplinary matters stem from a suit for declaratory judgment that Maxwell brought in Superior Court against two former clients and a corporation in an effort to retain ownership of eleven shares of stock. The defendants filed a counterclaim seeking rescission of the stock transfer, contending that Maxwell's law firm had breached its fiduciary duty in representing the corporation and owners. The trial court ruled for the defendants and in doing so issued a lengthy opinion detailing what it found to be substantial conflicts of interest on the part of Maxwell and a partner, Robert Bear. *See Maxwell v. Gallagher*, No. 88–10687 (D.C.Super.Ct. October 13, 1995). On appeal, this court sustained the order rescinding the stock transfers (but reversed an award of punitive damages). *See Maxwell v. Gallagher*, 709 A.2d 100 (D.C.1998).

On the basis of facts adduced in the Superior Court case,[2] Maryland Bar Counsel brought disciplinary charges against Maxwell. Then, in November 1999, Maxwell and Maryland Bar Counsel entered into a Joint Petition for Reprimand which, in relevant part, stated as follows:

\* \* \* \*

2. The misconduct, as charged, took place in 1986 and 1987 and the Respondent has not been the subject of any other complaints or discipline during that time.

3. The conduct was first addressed to the District of Columbia Superior Court. The October 13, 1995 Opinion of the trial court was appealed to the District of Columbia Court of Appeals[,] whose Opinion did not issue until April 2, 1998.

4. The parties agree that the appropriate disposition should be a published

---

**1.** In this jurisdiction the corresponding sanction is a public censure. *See In re Bell,* 716 A.2d 205, 206 (D.C.1998).

**2.** A partial summary of the facts as found by the trial court is contained in *Maxwell,* 709 A.2d at 101–02.

reprimand for violations of DR 5–104(a)(b) and DR 5–105(a)(b) of the Code of Professional Responsibility and Rule 1.7(a)(b) and 1.8(a)(b) of the Rules of Professional Conduct.[3]

Following the order of public reprimand by the Maryland Court of Appeals, this court directed the Board to recommend whether reciprocal discipline should be imposed. Bar Counsel reviewed the evidence as set forth in the findings of the Superior Court in the civil case and found "significant reasons to decline to impose discipline identical to that imposed by the Maryland Court." Maxwell's misconduct had taken place in the District of Columbia and, according to Bar Counsel, "involve[d] significant conflicts of interest." On the other hand, there was no contested proceeding in Maryland but instead a stipulated disposition without an evidentiary hearing. For this reason, Bar Counsel advised that

> the more appropriate course is to refer the matter to a Hearing Committee for its recommendation as to the appropriate discipline pursuant to D.C. [Bar] R. XI, § 11(g)(2). Such a course would result in a proceeding where the concession of misconduct that [Maxwell] accepted in Maryland is given force and effect. D.C. [Bar] R. XI, § 11(g). Thus, the proceeding should address only the issue of sanction and not the issue of violation *vel non.* The Hearing Committee should receive and consider any and all evidence relevant to sanction.

> Alternatively, the Board could direct Bar Counsel to institute such proceedings as may be appropriate pursuant to D.C. [Bar] R. XI, § 11(g)(3). Such a procedure would allow for an examination [of] the facts and circumstances of the misconduct for the purpose of determining whether the stipulated discipline in Maryland is not sufficient in light of the misconduct.[4]

The Board, while agreeing that identical reciprocal discipline should not be im-

---

**3.** Maryland DR 5–105(A) and (B), in effect before January 1, 1987, both pertained to limiting business relations with a client. Rules 1.7(a) and (b) and Rules 1.8(a) and (b), effective after January 1, 1987, relate to conflicts of interest.

**4.** D.C. Bar Rule XI, § 11(g) provides in relevant part:

> If the Board concludes that reciprocal discipline should not be imposed, it shall accept the facts found by the disciplining *court* unless it has made a finding under (1), (2), or (5) of subsection [(c)] of this section. In the absence of such a finding, the Board shall either:
> (1) report to the Court its recommendation as to the appropriate discipline, or
> (2) refer the matter to a Hearing Committee for its recommendation as to the appropriate discipline, or
> (3) direct Bar Counsel to institute such proceedings as may be appropriate.
> . . . .

Rule 11(g) incorrectly refers to § 11(b) instead of (c). *Cf. In re Garner,* 576 A.2d 1356, 1357 n. 2 (D.C.1990).

Rule XI, § 11(c), in turn, states in relevant part:

> Reciprocal discipline shall be imposed unless the attorney demonstrates, by clear and convincing evidence, that:
> (1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
> (2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or
> (3) The imposition of the same discipline by the Court would result in grave injustice; or
> (4) The misconduct established warrants substantially different discipline in the District of Columbia; or
> (5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

posed, rejected Bar Counsel's recommendation of an evidentiary proceeding under Rule XI, § 11(g)(2) or (3). Rather, the Board stated:

> The facts of this case were well-developed in the bench trial held in Superior Court and reported at length in the trial court's detailed opinion. The trial court's opinion was reviewed by the Court on appeal and the trial court's decisions with respect to [Maxwell's] breach of fiduciary duty were upheld by the Court. The Maryland Court's inquiry included an investigation by an inquiry panel and Maryland's Review Board before the Attorney Grievance Commission filed charges against [Maxwell] and his law partner. The Maryland Petition for Disciplinary Action relied on the factual findings from our trial court. The Maryland Court's sanction reflects its consideration of these materials, along with [Maxwell's] stipulation. Under these circumstances, we are not at all troubled by the fact that no evidentiary hearing was held in Maryland.

The Board was disturbed by "the fact that the misconduct at issue here took place between 1986 and 1988," and that "[c]onsiderably more time would pass before this Board and the Court could reach a final resolution if we were to follow Bar Counsel's suggestion and refer this matter to a hearing committee." Accordingly, on the basis of the facts found in the Superior Court decision and opinion, the Board was "convinced that this case fits squarely into the substantially different discipline exception under D.C. [Bar] R. XI, § 11(c)(4)":

> [Maxwell's] conduct as an attorney in the District of Columbia involved serious conflicts of interest over a sustained period of time resulting in personal enrichment at the expense of his clients. In an original case, this Board would clearly recommend a suspensory sanction . . . for the type of conduct at issue here.

Moreover, "[t]he facts that were found by the trial court make it clear that [Maxwell] engaged in conduct that this Board would deem to be dishonest," and further revealed that Maxwell's misconduct "extended actively over a two-year period [while] the effects of his misconduct were extended for an additional seven years as [Maxwell] and his law partner sought through litigation to retain the stock in [the] company that the trial court concluded they had improperly taken." The Board therefore recommended a one-year suspension, which it said would "send[ ] a warning to those who practice here that conflicts of interest and self-dealing at the expense of clients is very serious misconduct in this jurisdiction."

## II.

◼ We agree with the Board that demonstrated conflicts of interest by a lawyer in the District of Columbia extending over years and characterized by self-dealing at a client's expense warrant discipline beyond a public reprimand. If Maxwell's conduct in fact fits that description, he should be disciplined more severely than he has been so far. But we also understand the Board's concern that the misconduct Maxwell stipulated to (minimally) in the Maryland proceedings took place nearly fifteen years ago, and that further evidentiary proceedings followed by Board and court review will turn this disciplinary matter even deeper shades of gray. Maxwell has not helped his case by proffering neither at the Board level nor in this court any factual defense to what he terms the "alleged critical aggravating factors" the Board relied on in recommending his suspension. So, the Board was understandably skeptical that an evidentiary hearing on reciprocal sanction will produce a mate-

rially different picture of his conduct than emerged at the civil trial.

Nevertheless, on this record we cannot accept the Board's recommendation of increased discipline because to do so would give preclusive effect to factual findings made in a non-disciplinary proceeding and present grave questions about the adequacy of the notice and opportunity to be heard that Maxwell received.

■ In a reciprocal discipline case, there is a rebuttable presumption that the discipline imposed in the District of Columbia will mirror that imposed by the original disciplining jurisdiction. *See* Rule XI, § 11(c); *In re Spann*, 711 A.2d 1262, 1263 (D.C.1998). At the same time, Rule XI, § 11(f)(2) grants the court independent authority to impose different discipline if it finds "on the face of the record ... by clear and convincing evidence" that an exception under § 11(c) applies. And, "[p]ursuant to the same authority, the Board can recommend a different sanction where it believes an exception applies," *Spann*, 711 A.2d at 1263 n. 2 (citing *In re Gardner*, 650 A.2d 693, 696 (D.C.1994)). The Board concluded that this case fits within the "substantially different discipline" exception of Rule XI, § 11(c)(4). *See* note 4, *supra*. Rule XI, § 11(g) further provides that if the Board concludes that reciprocal discipline should not be imposed, it presumptively must "accept the facts found by the disciplining court." [5]

The difficulties in this case begin with the fact that in agreeing to a public reprimand in Maryland, Maxwell did not admit to any facts regarding the violations he conceded, save only that the misconduct took place in 1986 and 1987 and "was first addressed to the District of Columbia Superior Court," whose "[o]pinion ... was

[then] appealed to the District of Columbia Court of Appeals"—the latter two admissions being essentially meaningless. Although Maryland Bar Counsel's petition for discipline relied on the factual findings of the Superior Court judge, those findings are not referenced in and did not become a basis for the discipline imposed by the Maryland Court of Appeals. We know this both from the face of the Court's order (entered merely "[u]pon consideration of the Joint Petition for Reprimand by Consent") and from the fact that, in the related discipline matter concerning Maxwell's partner, Bear, the Court of Appeals held that the opinions of the trial judge and of this court in *Maxwell* were inadmissible as proof of ethical violations by Bear, primarily because "issues decided in a civil case under a preponderance of the evidence standard" could not be given "preclusive effect ... in a subsequent attorney discipline proceeding." *Attorney Grievance Comm'n of Maryland v. Bear*, 362 Md. 123, 763 A.2d 175, 181 (2000).

Consequently, the Maryland record of Maxwell's discipline, by itself, fails the test we stated in *In re Zilberberg*, 612 A.2d 832, 835 (D.C.1992), that "in a reciprocal proceeding, when a greater sanction is sought in the District of Columbia, the record [from the original disciplining jurisdiction] must affirmatively show that a greater sanction is warranted." Rather, as we went on to say in *Zilberberg*, "[i]f the existing record from [that] jurisdiction is insufficient[,] ... then the record must be augmented before a greater sanction may be imposed," and "[t]he usual means of augmentation will ... be ... a *de novo* hearing before a hearing committee. *See* D.C. Bar Rule XI, § 11(g)(2)." *Id.* (footnote omitted). In this case, however, the Board was of the view that it could dis-

---

5. That is, it must accept those facts unless it has made a contrary finding under para-

graphs (c)(1), (2), or (5) of § 11(c). *See* note 4, *supra*.

pense with that hearing because the facts concerning Maxwell's breach of fiduciary duty "were well-developed in the bench trial held in the Superior Court and reported at length in the trial court's detailed opinion." We cannot accept that conclusion.

■ Bar Counsel defends it by arguing that the trial judge in *Maxwell* "acted in a quasi-disciplinary capacity," because the trial (especially of the counterclaim) revolved about an alleged breach of fiduciary duty arising from obvious conflicts of interest by Maxwell and Bear. But the differences between a civil suit and a disciplinary proceeding—pitting the state against an attorney in regard to alleged misconduct—refute this argument.

> An attorney has a right to procedural due process in a disciplinary procedure. Due process is afforded when the disciplinary proceeding provides adequate notice [of the charges of misconduct] and a meaningful opportunity to be heard.

*In re Day,* 717 A.2d 883, 886 (D.C.1998); *In re Ruffalo,* 390 U.S. 544, 550, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968) (other citations omitted). "[F]air notice of the charges" is necessary precisely "to afford the attorney an opportunity to explain or defend against allegations of misconduct." *In re Bielec,* 755 A.2d 1018, 1024 (D.C. 2000). It cannot fairly be said that in his own civil suit for declaratory relief, even coupled with a counterclaim alleging his wrongdoing as a lawyer, Maxwell was on notice that conclusions could one day be drawn—irrebuttably—from that record as to what discipline to impose for ethical breaches arising from the transaction. Were it otherwise, Maxwell might well have rethought the wisdom of suing to establish the ownership of eleven shares of stock. And equally questionable is whether he would have consented to discipline in Maryland knowing that in a reciprocal proceeding he would be met with preclusive reliance on the factual findings from the earlier trial. These reasons alone convince us that the bypass of § 11(g)'s evidentiary proceedings recommended by the Board is unacceptable.

■ But there is more, because a cornerstone of the Board's recommendation of suspension is that, although "[t]he stipulated disposition [in Maryland] does not contain a finding of dishonesty," the facts found by the Superior Court judge "make it clear that [Maxwell] engaged in conduct that this Board would deem to be dishonest." *See* Rule 8.4(c), District of Columbia Rules of Professional Conduct. Accepting the Board's recommendation on this record would thus come dangerously close to disciplining Maxwell for misconduct—dishonesty—not found in Maryland on the basis of facts proven only by a preponderance of the evidence, contrary to this jurisdiction's standard in original discipline proceedings. *See In re Anderson,* 778 A.2d 330, 335 (D.C.2001) (citing cases).[6] Bar Counsel reminds us that we have "imposed reciprocal discipline where triers-of-fact employed the lower evidentiary standard," citing *In re Benjamin,* 698 A.2d 434, 440 (D.C.1997) (New York's "use of a preponderance standard does not establish an infirmity of proof" under § 11(c)(2)). But the distinction is already evident: because Maryland did not find dishonesty by *any* standard, that violation has yet to be established in "a disciplinary procedure that includes notice, an opportunity to be heard, [and] sufficient proof of [the] mis-

---

**6.** Indeed, any finding or intimation by the trial judge in the civil case that Maxwell had been dishonest was marginal to the issue before her of whether he breached a fiduciary duty.

conduct." *In re Velasquez*, 507 A.2d 145, 147 (D.C.1986) (per curiam). Facts in a civil trial suggesting dishonesty would not suffice as proof in an original discipline matter, and neither will they support by themselves the imposition of increased discipline in a reciprocal proceeding.

For all of these reasons, Bar Counsel was correct in originally submitting that, if the Board resolves not to recommend identical discipline, the matter should proceed in accordance with either § 11(g)(2) or § 11(g)(3) of Rule XI. The procedural unfairness of relying on facts found in the Superior Court civil case to issue a greater sanction than that imposed by Maryland commands that result. The decision as to which of those paths to follow is, of course, the Board's, and we make only a final observation. The unpalatable choice in this case between acquiescence in reciprocal discipline that the Board has plainly indicated it thinks inadequate, and the prospect of drawn-out additional proceedings in a disciplinary case already showing considerable age, prompts us to suggest that the court, in its administrative capacity, may need to consider again whether to expand Bar Counsel's authority under the rules to include negotiated dispositions in lieu of formal adversary proceedings.

The case is remanded to the Board for further proceedings consistent with this opinion.

*So ordered.*